UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY D. DALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:14-cv-1296-WTL-DML |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation on
## Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Anthony D. Dale is not disabled.

## Introduction

Mr. Dale applied in September 2011 for Supplemental Security Income disability benefits (SSI) under Title XVI of the Social Security Act, alleging that he has been disabled since June 13, 2011, coinciding with a fall that caused a severe head injury. Acting for the Commissioner of the Social Security Administration following a hearing held January 16, 2013, administrative law judge Mark C. Ziercher issued a decision on March 26, 2013, finding that Mr. Dale is not disabled. The Appeals Council denied review of the ALJ's decision on June 4, 2014, rendering

the ALJ's decision for the Commissioner final. Mr. Dale timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Dale contends the Commissioner's decision must be reversed and remanded because the three jobs the ALJ found Mr. Dale is capable of performing are inconsistent with his functional capacity. As explained below, the court agrees and finds that the ALJ's decision is not supported by substantial evidence.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Mr. Dale is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. РFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can

perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Mr. Dale was born in February 1963 and was 48 years old at the time he applied for SSI disability benefits. He alleged a disability onset date of June 13, 2011, which coincided with his admission to an emergency room because of a fall

that caused a severe head injury and intercranial bleeding. (*See* R. 305). He was discharged one month later on July 12 to the 24-hour care of family members. (R. 356).

At step one, the ALJ found that Mr. Dale had not engaged in substantial gainful activity since his alleged onset date. At step two, he identified the following severe impairments: stroke, borderline intellectual functioning and a cognitive disorder not otherwise specified, and an adjustment disorder with mixed anxiety and depressed mood. At step three, he found no listings were met. Mr. Dale does not challenge the findings at steps one through three. The ALJ next determined Mr. Dale's residual functional capacity, i.e., his maximum work capacity despite his impairments and their effect on his functioning. With respect to Mr. Dale's intellectual and cognitive impairments, the ALJ included the following parameters in his RFC determination and in his hypothetical question to the vocational expert: Mr. Dale is capable of "goal-oriented rather than production-oriented work," can understand, remember, and perform simple work tasks at GED Reasoning Level 02, and can perform productive work up to 98% to 100% of an 8-hour workday.

At step four, the ALJ determined that Mr. Dale is not able to perform his past work in the construction industry. But with his RFC and based on the testimony of a vocational expert, the ALJ found that Mr. Dale is capable of performing three jobs: (1) a cashier, as described at DOT 211.462-010, (2) a furniture rental clerk, at DOT 295.357-018, and (3) an order caller, at DOT 209.667-014. (R. 27). The VE stated there were significant numbers of each job in Indiana,

5

though their numbers would be reduced if certain physical restrictions must be accommodated.

The ALJ credited the VE's testimony and determined that because a significant number of jobs are available, Mr. Dale is not disabled. (R. 28-29).

## II. The ALJ's step five decision is not supported by substantial evidence.

Mr. Dale contends the step five decision is not supported by substantial evidence because the jobs identified by the vocational expert are incongruent with Mr. Dale's residual functional capacity or other evidence in the record the ALJ credited though did not include in his RFC or hypothetical question to the VE. Mr. Dale argues it is preposterous to find he can work as a cashier, furniture rental clerk, or order caller given his intellectual and cognitive deficiencies. The court agrees. The court will first provide a summary of the evidence regarding Mr. Dale's cognitive abilities and then address the incongruence of the three jobs identified by the VE (and adopted by the ALJ) with Mr. Dale's abilities.

As noted above, Mr. Dale sustained a severe head injury in June 2011. After a month in the hospital, the discharging physician explained that Mr. Dale needs 24-hour care because of a "baseline level of poor cognition." (*Id.*) He was discharged only after family members promised to provide him with 24 hour/day care. In October 2011, he was referred for a speech pathology evaluation because of speech and language difficulties thought to be secondary to intercranial bleeding from the June 2011 fall. (R. 382). Although Mr. Dale was found to be pleasant, jovial, and eager to participate in the evaluation, he also was found to have poor self-

6

awareness, questionable insight, and impaired memory. (*Id.*) His cognitive skills were tested using the Ross Information Processing Assessment and his scores were compared to an assessment from July 8, 2011. Though he had improved in several areas, his immediate memory was tested at 46%, recent memory at 80%, problem solving/abstract reasoning at 67%, organization of information at 70%, and auditory processing and comprehension at 77%. These areas were evaluated as "persistent moderate deficits" by the therapist. (*Id.*)

     Mr. Dale continued to attend speech and language therapy sessions over the next several months. His cognitive therapy goals were modest, to say the least. His long term goal was to be able to function safely in a daily environment. His speech pathology homework included tasks such as working to name a category that three items in a list belong to and working to name an object that is described with three clues. (R. 385). As of December 2011, the therapist reported that Mr. Dale has only 57% accuracy in his recall of information from word or number lists, even with an additional two repetitions. But because the therapist believed he could function safely in his daily environment and had met short term goals such as being able to sustain attention to a single task for at least 5 minutes with no more than one reminder (R. 386), he was ready to be discharged from regular cognitive therapy visits. (*Id.*)[1] The psychologist who conducted a mental status examination in

---

[1] The ALJ described the report from Mr. Dale's last visit with the therapist as indicative of Mr. Dale having "developed 100 percent accuracy with his abstraction skills" and having "shown the ability to sustain tasks." (R. 23). To the extent that description was designed to suggest Mr. Dale has good cognitive skills, it is a gross mischaracterization of the therapy record. The 100% abstraction skill was Mr.

7

November 2011 opined that Mr. Dale's intelligence was borderline to below average based on his fund of knowledge and verbalizations. (R. 407). He also noted Mr. Dale's inability to do the most simple math problems. (R. 408).

The ALJ did not dispute the accuracy of any of the above evidence and cited it favorably as indicative of Mr. Dale's functioning. In addition, he stated that the Mental Residual Functional Capacity ("MRFC") assessment in the record was persuasive and deserving of significant weight. (R. 25). That assessment concludes that Mr. Dale is **markedly limited** in the ability to understand and remember detailed instructions and in carrying out detailed instructions. (R. 419). The ALJ also found Mr. Dale is limited to work tasks at GED Reasoning Level 02. (R. 21).

These limitations do not fit the jobs identified by the VE, whose testimony was adopted by the ALJ. In addition to the fact that the cashier and furniture clerk jobs are described in terms that are obviously unsuitable for Mr. Dale (given the math and language skills listed in the descriptions), they require GED Reasoning Level 3, a higher functioning level than Level 2. The descriptions of these two jobs from the DOT are listed below. The GED codes which are measured in three categories (Reasoning Development, Mathematical Development, and Language Development) appear on the last line of the description. For example, "GED: R3" means Reasoning Level 03.

---

Dale's ability to name two similarities and two differences for two different foods. And his ability to sustain tasks was measured by whether he could sustain attention to a single task for at least five minutes with no more than 1 reminder. (*See* R. 386).

8

**1. Cashier:**

CODE: **211.462-010**
TITLE(s): **CASHIER II (clerical) alternate titles: cash clerk; cashier, general; cashier, office; ticket clerk**
Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).
**GOE: 07.03.01 STRENGTH: L GED: R3 M2 L2 SVP: 2 DLU: 81**

**2. Furniture-Rental Clerk**

CODE: **295.357-018**
TITLE(s): **FURNITURE-RENTAL CONSULTANT (retail trade) alternate titles: decorator consultant; rental clerk, furniture**
Rents furniture and accessories to customers: Talks to customer to determine furniture preferences and requirements. Guides or accompanies customer through showroom, answers questions, and advises customer on compatibility of various styles and colors of furniture items. Compiles list of customer-selected items. Computes rental fee, explains rental terms, and presents list to customer for approval. Prepares order form and lease agreement, explains terms of lease to customer, and obtains customer signature. Obtains credit information from customer. Forwards forms to credit office for verification of customer credit status and approval of order. Collects initial payment from customer. Contacts customers to encourage followup transactions. May visit commercial customer site to solicit rental

contracts, or review floor plans of new construction and suggest suitable furnishings. May sell furniture or accessories [SALESPERSON, FURNITURE (retail trade) 270.357-030].
**GOE: 09.04.02 STRENGTH: L GED: R3 M2 L2 SVP: 2 DLU: 86**

Because these two jobs do not, in fact, fit the ALJ's RFC, the ALJ's conclusion that Mr. Dale is capable of performing them is not supported by substantial evidence.

The order caller job does comply with the ALJ's Reasoning Level 2 requirement, but Mr. Dale cannot perform it because Mr. Dale is ***markedly limited*** in the ability to understand and remember detailed instructions and in carrying out detailed instructions, according to an expert assessment the ALJ stated was persuasive and given significant weight.  (R. 25, 419).  According to the DOT, Reasoning Level 2 requires the worker to have "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations." The ALJ neglected to tell the vocational expert about Mr. Dale's marked limitations in understanding, remembering, or carrying out detailed instructions, which are clearly inconsistent with the DOT 209.667-014 Order Caller job, described below.

CODE: **209.667-014**
TITLE(s): **ORDER CALLER (clerical) alternate titles: caller; call-out clerk; order-desk caller**
Reads items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available. May read items to CHECKER (clerical) I who examines articles prior to shipping. May be designated by kind of data called out to other worker as Weight Caller (clerical); Yardage Caller (textile).
**GOE: 05.09.03 STRENGTH: L GED: R2 M1 L2 SVP: 2 DLU: 77**

The Seventh Circuit has admonished administrative law judges time and again to ensure they provide a complete picture of a claimant's functional capacity to a vocational expert so there is assurance that expert testimony regarding available jobs took into account all functional limitations the ALJ has credited. *See Varga v. Colvin,* ___ F.3d ___, 2015 WL 4488346 (7th Cir. July 24, 2015) (there must be some assurance the VE does not refer to jobs the claimant cannot perform); *Steele v. Barnhart,* 290 F.3d 936, 942 (7th Cir. 2002) (hypothetical questions to the VE must include all limitations supported by the record "to ensure that the vocational expert does not refer to jobs that the applicant cannot work because the expert does not know the full range of the applicant's limitations"); *Jelinek v. Astrue,* 662 F.3d 805, 813 (7th Cir. 2011) ("We have stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity. . . .")

Because the Order Caller job—with its requirement that the worker carry out detailed instructions—conflicts with the finding in the Mental Residual Functional Capacity assessment (which the ALJ accorded significant weight) that Mr. Dale is markedly limited in that functional area, the determination Mr. Dale can perform the job is not supported by substantial evidence.

In summary, there is a lack of rational support for the ALJ's conclusion that Mr. Dale is possibly a candidate for any of the three jobs he identified at step five.

**Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed in accordance with 28 § U.S.C. 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Date: July 31, 2015

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system